# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ACTIVE NETWORK, INC., <br><br> Petitioner, <br> vs. <br><br> MONSTER WORLDWIDE, INC., <br><br> Respondent. | CASE NO. 12cv785-CAB (MDD) <br><br> ORDER DENYING MOTION TO QUASH <br><br> (Doc. No. 1) |

Before this Court is the motion of Petitioner The Active Network, Inc. ("Active") to quash third-party subpoenas issued to Active by Respondent Monster Worldwide, Inc. ("Monster"). Active also moves to disqualify the law firm Jones Day, which represents Monster, from engaging in any discovery from Active.

## Background

The underlying lawsuit was filed on December 16, 2011, in the Southern District of New York and carries Case Number 11-civ-9262. In the underlying case, Monster has sued Darko Dejanovic, Monster's former Chief Information Officer now employed by Active, alleging that he violated certain non-solicitation agreements made with Monster. Active is not a party in the underlying case. The subpoenas at issue were obtained in this District, where Active is headquartered, pursuant to Fed.R.Civ.P. 45.

Active filed the instant motion on March 30, 2012. (Doc. No. 1). On April 13,

1  2012, Monster filed a response in opposition, contending that this Court lacks
2  jurisdiction to decide the motion, and, in the alternative, that the subpoenas are
3  proper.  (Doc. No. 7).  Active replied on April 23, 2012. (Doc. No. 8).

## Discussion

### 1. Motion to Quash

Fed.R.Civ.P. 45(c)(3), provides that it is the issuing court that has the authority to modify or quash subpoenas.  The instant subpoenas were issued from the United States District Court for the Southern District of California.  Consequently, this Court has jurisdiction to consider the motion to quash.  Rule 45(c)(1) requires that "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  The subpoena must be modified or quashed by the Court if it subjects a person to undue burden.  Rule 35(c)(3)(iv).

Active asserts that compliance would be an undue burden because of a conflict of interest between Active and Jones Day.  Active contends that Jones Day acquired confidential information about Active when a Jones Day attorney, Mr. Howard, represented Active and its employee, Ms. Roland, in a substantially similar matter.  Although Mr. Howard is not involved in the underlying case between Monster and Mr. Dejanovic, Active contends that Mr. Howard's knowledge of Active's confidential information should be imputed to Jones Day.  Accordingly, Active seeks to disqualify Jones Day from seeking discovery from Active in connection with the underlying lawsuit.  Monster counters that Mr. Howard neither formed an attorney-client relationship with Active nor acquired confidential information from Active.

When a lawyer obtains confidential information from a previous client, he may not later represent a client whose interests are adverse to the former client.  Cal. R. Prof. Conduct 3-310(E).  The Court agrees that it would pose an undue burden for an attorney with a clear conflict of interest to seek discovery from a former client.  Accordingly, the Court must proceed to determine if such a conflict exists in the

present case.

First, it must be determined whether there was a "direct professional relationship" between Active and Jones Day. City and County of San Francisco v. Cobra Solutions, 135 P.3d 20, 25 (Cal. 2006). If Jones Day neither represented Active nor obtained confidential information from Active, there is no conflict of interest. In its motion, Active contends that Mr. Howard formed a direct professional relationship with Ms. Roland when he dispensed legal advice to Ms. Roland in both her personal capacity and as an employee of Active. Petitioner provides the sworn declaration of Ms. Roland, in which she explains:

> Because I had signed certain agreements with Visual Sciences that purported to restrict me from soliciting employees to join Active and/or that could expose Active to liability for such solicitation, I decided to consult legal counsel about the non-solicitation restrictions, compliance with those restrictions, and Active's potential exposure for hiring employees in light of those restrictions.

(Roland Decl. ¶ 3). Ms. Roland asserts that she contacted Mr. Howard for legal advice "about the scope of our non-solicitation obligations." Id. at ¶4. Ms. Roland asserts that although she does not recall the entirety of the conversation, she does recall that Mr. Howard advised her regarding the scope of the "non-solicitation obligations and how Active should operate its business in light of those obligations and on a going forward basis regarding other similar situations." Id. at ¶5. Ms. Roland asserts that she has put into practice the advice she received on how to "deal with employees who join Active and who are subject to employee non-solicitations with prior employers." Id. Ms. Roland understood that this legal advice was to be kept confidential and not used against her in the future. Id.

Monster counters that there was no prior relationship between Mr. Howard and Active. (Doc. No. 7 at 6). Mr. Howard states in his declaration that his discussions with Ms. Roland involved her non-solicitation agreement with Visual, an agreement to which Active was not a party. (Howard Decl. ¶ 3). Mr. Howard claims that his contemporaneous written notes of their conversations support his assertion. Monster also contends that Ms. Roland's declaration confirms that the topic of the

1 conversation was her contract with Visual.  (Roland Decl. ¶ 3).

2 According to Mr. Howard, the only time Active was discussed during his
3 conversations with Ms. Roland was with regard to whether Active could be compelled
4 to indemnify Ms. Roland if she was sued by Visual for violation of her non-solicitation
5 agreement.  (Howard Decl. ¶ 3).  As Monster notes, Ms. Roland's interests in that
6 matter would potentially be adverse to Active.  (Doc. No. 7 at 7).  Monster
7 acknowledges that Mr. Howard offered to represent both Active and Ms. Roland if
8 they should be sued by Visual, and that Mr. Howard sent an engagement letter to
9 Active.  Id.  Active, however, chose not to sign the engagement letter and has not
10 retained Jones Day for any purposes.  Id.  Mr. Howard also gave a 30-45 minute
11 presentation to Active employees at Ms. Roland's request.  Id. at 8.  The presentation
12 was on general wage and hour issues, not about hiring or non-solicitation
13 agreements.  Id.  According to Mr. Howard, at no point did he obtain confidential
14 information about or from Active.  (Howard Decl. ¶¶ 8, 9).[1]

15 Active has not met its burden of establishing that a direct professional
16 relationship existed between Mr. Howard and Active.  Ms. Roland's statements
17 indicating that Mr. Howard provided advice to Active are countered by Mr. Howard's
18 declaration that he did not.  Active declined to sign a letter of engagement with Mr.
19 Howard or retain him or Jones Day for any purpose following Mr. Howard's
20 consultation with Ms. Howard.   Furthermore, Mr. Howard states that he did not
21 receive any confidential information from or about Active at any time.  Active's
22 motion ultimately rests on the idea that the subpoenas at issue are unduly
23 burdensome because Jones Day is in possession of confidential information about
24 Active provided either by Ms. Roland or by Active.  Mr. Howard's sworn statements
25 alleviate that concern.

---

27/28 [1]Monster also notes that Mr. Howard did not bill for the advice he rendered to Ms. Roland or the presentation, and that he only spent a couple hours speaking with Ms. Roland during their meeting, and less than an hour giving the presentation.  Id. at 7-8. Neither factor, however, prevents the formation of an attorney-client relationship.

While it is likely that Mr. Howard had a professional relationship with Ms. Roland, that does not automatically impute the relationship to Active, especially in light of Ms. Roland and Active's potentially adverse interests regarding indemnity. According to Mr. Howard, his offer to represent both if Visual threatened suit was based upon the assumption that the potential adversity could be resolved. (Howard Decl. ¶6). As there is no previous professional relationship between Active and Jones Day, the Court need not examine whether Active has met its burden of showing that the representation concerned a substantially similar matter.

Accordingly, because Active is not a former client of Mr. Howard or Jones Day and because the Court is satisfied that Mr. Howard did not obtain any confidential information from or about Active during his relationship with Mr. Roland or while providing a general wage and hour presentation to Active. The Court finds that it is not unduly burdensome for Active to respond to the subpoenas. The motion to quash is **DENIED**.

### 2. Motion to Disqualify

In their pleadings, the parties discuss whether this Court has jurisdiction to consider Active's motion to disqualify Jones Day from seeking discovery from Active in connection with the underlying lawsuit. Active contends that the Court can exercise its inherent authority to decide the motion. In opposition, Monster contends that the court lacks jurisdiction because the motion requires the Court to issue an order beyond the scope of Rule 45. Monster notes that Rule 45 only provides authority to quash or modify a subpoena, not to disqualify a law firm from a case or from discovery. Monster contends that it would be inappropriate for the Court, when utilizing the narrow jurisdiction provided under Rule 45, to exercise its "inherent authority" and decide a motion to disqualify. (Doc. No. 7). In its reply, Active re-asserts that the Court has an independent obligation to enforce ethical rules.

The Court need not reach the issue. Active contends that disqualification is warranted because of a conflict of interest. As discussed above, this Court has found

1 the Active has not sustained its burden, under Rule 45, to show that such a conflict
2 exists.
3     Even if the Court were to find a conflict, it would not necessarily require that
4 the Court disqualify Jones Day from seeking further discovery from Active.  This
5 Court could satisfy its obligation by quashing the subpoena, thereby ending any
6 threat of immediate, unethical action.  The Southern District of New York, where this
7 case is being litigated, would then be the proper venue to determine if further
8 protective measures are required.[2]  Accordingly, Active's motion to disqualify is
9 **DENIED WITHOUT PREJUDICE**.

## Conclusion

11 Petitioner's motion to quash is **DENIED**.  Petitioner's motion to disqualify is
12 **DENIED WITHOUT PREJUDICE.**
13    **IT IS SO ORDERED**.

15 DATED:  May 15, 2012

17 Hon. Mitchell D. Dembin
18 U.S. Magistrate Judge

---

[2]It is also important to note that nothing in the pleadings suggests a wilful or gross violation of ethical rules, such that this Court would be required to immediately take action in order to uphold the integrity of the Courts.  At most, Active's pleadings suggest negligence on the part of Jones Day in failing to discover that an employee of a non-party was briefly the client of an attorney in a separate office.